UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20984-CIV-KING

DR. FRANK I. SINGLETON,

    Plaintiff,

v.

THE PUBLIC HEALTH TRUST OF
MIAMI-DADE COUNTY,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendant THE PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY (the "Health Trust")'s Motion to Dismiss Plaintiff's Complaint (DE 11), filed April 5, 2016.[1] Therein, Defendant moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss this action for lack of subject matter jurisdiction, arguing that the Health Trust is a state agency immune from suit under the Eleventh Amendment.

### I. BACKGROUND

Plaintiff's two-count Complaint (DE 1) alleges disability discrimination and retaliation by his former employer, Defendant Health Trust, pursuant to the Americans

---

[1] The Court has also considered Plaintiff DR. FRANK I. SINGLETON's Response in Opposition to Defendant's Motion to Dismiss (DE 14), filed April 28, 2016, and Defendant's Reply in Support of the Motion to Dismiss (DE 16), filed May 3, 2016.

1

with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008, and states the following facts.

Plaintiff was employed by the Health Trust and worked as an attending physician in the out-patient Hematology-Oncology Clinic at Jackson Memorial Hospital. On October 16, 2009, Plaintiff advised Dr. Thresia Gambon, the Interim Department Head, that he had been diagnosed with Attention Deficit Hyperactive Disorder. On January 26, 2010, Plaintiff informed Alma Breeden, RN at the Employee Health Office, that he was in need of additional accommodation for his disorder because he was falling behind in his work. On May 7, 2010, Plaintiff was transferred to Jefferson Reaves Senior Health Center (the "Center") to work as an attending physician. Before transferring, Plaintiff telephoned the Medical Director at the Center, Dr. Michael Sheehan, and informed him that his disorder created substantial difficulty in seeing a large number of patients. Dr. Sheehan did not respond to Plaintiff's request but affirmed that Plaintiff, like all physicians in the Center, was expected to see sixteen patients daily.

Upon arrival at the Center, Plaintiff provided Dr. Sheehan with a letter from his neuropsychologist regarding his disorder and need for accommodation. At some point after beginning work at the Center, the number of patients Plaintiff was required to see increased from sixteen to twenty. Between May 7, 2010 and May 17, 2010, Plaintiff received a Disciplinary Action Report for failure to see twenty patients a day. On June 10, 2010, Plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission. Between July 7, 2010 to July 30, 2010, Plaintiff was on leave

from work due to military duty. Upon returning to work on August 2, 2010, he was placed on leave as a result of a recommendation that his employment be terminated.

On August 17, 2010, Plaintiff met with Dr. Michael Butler, Chief Medical Officer of the Health Trust. Dr. Butler agreed to review Plaintiff's medical charts to reach his own determination as to the allegations of Plaintiff's incompetency. On October 25, 2010, after reviewing Plaintiff's employment history, Dr. Butler decided not to terminate Plaintiff. Instead, Dr. Butler offered Plaintiff a position with the Department of Quality and Patient Safety. Plaintiff accepted, began working on November 15, 2010, and trained until December 31, 2010, but was never permanently placed in a position. Instead, from January to May 2011, Plaintiff was given a myriad of positions, taking on many different tasks and responsibilities. From May 16, 2011 to May 20, 2011, Plaintiff was on military leave and returned to work on May 23, 2011. On May 26, 2011, Plaintiff was terminated from his employment. On September 9, 2011, Plaintiff filed a charge of retaliation with the Equal Employment Opportunity Commission. On March 17, 2016, Plaintiff filed this action against the Health Trust for disability discrimination and retaliation under the ADA, which the Court considers in the context of Eleventh Amendment immunity.

## II. LEGAL STANDARD

The Eleventh Amendment, as interpreted by the Supreme Court, generally provides that Article III's jurisdictional grant did not and does not limit the sovereign immunity that states enjoyed when they joined the Union. *Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748, 751 (11th Cir. 2014). This immunity from suit is available only to states and arms of the states. *Id.* "As the governmental entity invoking the Eleventh

3

Amendment, the [Health Trust] bears the burden of demonstrating that it qualifie[s] as an arm of the state entitled to share in its immunity." *Haven v. Bd. of Trustees of Three Rivers Reg'l Library Sys.*, 625 F. App'x 929, 933 (11th Cir. 2015) (internal quotation marks omitted).

The Eleventh Circuit, in an unpublished opinion, has indicated that the Eleventh Amendment immunity analysis is appropriately conducted under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Thomas v. U.S. Postal Service*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010) (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996)); *see also Keeler v. Florida Dep't of Health, Div. of Disability Determinations*, 397 F. App'x 579, 581 (11th Cir. 2010) (noting that "the Supreme Court has held that . . . Eleventh Amendment immunity is in the nature of a jurisdictional bar"). Regardless of whether Eleventh Amendment immunity is considered a jurisdictional defense or some other sort of defense (e.g., failure to state a claim upon which relief can be granted), the Court's analysis is substantially the same because the instant motion constitutes a facial attack as to the sufficiency of the complaint. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (noting that, on a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted—the court must consider the allegations of the complaint to be true).

### III. ANALYSIS AND DISCUSSION

In Eleventh Amendment cases, this Court uses four factors to determine whether an entity is an arm of the state in carrying out a particular function: (1) how state law

defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (*en banc*).[2] Under the circumstances alleged in this complaint, this Court considers whether the Health Trust acts as an arm of the state in carrying out its employment related functions.

### A. How State Law Defines the Health Trust

Defendant suggests that *Versiglio v. Board of Dental Examiners of Alabama*, 686 F.3d 1290 (11th Cir. 2012) makes the first factor "the most important factor in the analysis," implying that this factor can overwhelm and set aside full consideration of the other three factors. DE 11 at 3. Absent from Defendant's argument is language from *Walker*, which rejects the prospect of "collapsing the entire Eleventh Amendment multi-factor test into a single dispositive inquiry." 771 F.3d at 754. In considering the first factor, this Court heeds *Walker*'s reasoning and treats the first factor as an important but not overwhelming factor.

As for how state law defines the Health Trust, the Court considers a number of different factors, analyzing state law in a comprehensive manner. How the state courts treat the entity is only one part of this first factor. *Id.* The Court also weighs how the state legislature treats the particular entity in enacted legislation. *Id.*

---

[2] The Honorable Adalberto Jordan, writing for the Eleventh Circuit in *Walker*, explains that the third and fourth factors were previously consolidated as a single third factor, requiring consideration of the entity's fiscal autonomy. 771 F.3d at 752. However, in 2003, the Eleventh Circuit, sitting *en banc* in *Manders*, split the consideration of the entity's fiscal autonomy into a third factor (where the entity derives its funds) and a fourth factor (who is responsible for judgments against the entity). *Id.*

5

As for how state courts treat the Health Trust, Defendant claims that Florida state courts, including the Florida Supreme Court, treat it as an arm of the state. In support of this claim, Defendant cites *Public Health Trust of Miami-Dade County v. Acanda*, 71 So. 3d 782, 784 (Fla. 2011). In *Acanda*, the Florida Supreme Court affirmed the denial of the Health Trust's motion for directed verdict, which had argued that service was not perfected on the Department of Financial Services in accordance with Florida Statute section 768.28(7) governing the waiver of sovereign immunity in tort actions. In affirming the denial, the Florida Supreme Court held that Florida Statute section 768.28(7) "provides a limited waiver of sovereign immunity in negligence actions against the state, its agencies, or its subdivisions" and found that the failure to comply with the service requirement was not prejudicial and had been waived by the Health Trust's own untimeliness. *Id.* at 784. The inference can be drawn from *Acanda* that the Health Trust is a state agency or one of its subdivisions as defined by section 768.28. However, section 768.28(2) clarifies that state agencies or subdivisions can include counties, municipalities, and corporations primarily acting as instrumentalities or agencies of the counties or municipalities. "Under the traditional Eleventh Amendment paradigm, [although] states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis." *U.S. ex rel. Lesinski v. S. Florida Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir.), cert. denied sub nom. *Lesinski v. S. Florida Water Mgmt. Dist.*, 134 S. Ct. 2312, (2014); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). The Florida Supreme Court's *Acanda* opinion does not, however, clarify whether the Health Trust is

an agency or instrumentality of the state, as opposed to a county or municipality, where *Stewart v. Baldwin County Board of Education*, 908 F.2d 1499, 1509 (11th Cir. 1990), stating that "[t]he Amendment's bar to suits in federal courts . . . does not extend to counties, municipal corporations, or other political subdivisions of the state," is applied to the Eleventh Amendment analysis.

Defendant also cites several state court decisions that grant the Health Trust sovereign immunity, pursuant to various Florida statutes. However, like *Acanda*, these cases do not parse the distinction between county agencies, municipal agencies, and state agencies.[3] Defendant receives the strongest state court support from an opinion of the Third District Court of Appeal, which states that "the Public Health Trust of Dade County, Florida, [is] an agency and instrumentality of the State of Florida." *Pub. Health Trust of Dade County v. Gabrilove*, 349 So. 2d 1228, 1229 (Fla. 3d DCA 1977). Yet, just one year later, the same court reached the opposite conclusion: "[t]he Dade County Public Health Trust . . . is governmentally owned and operated by Dade County, Florida." *Cowell v. Fuller*, 362 So. 2d 124, 125 (Fla. 3d DCA 1978). Upon review, how the state courts treat the Health Trust is unsettled.

Federal courts which have considered the matter in depth conclude that the "[Health Trust] is an agency and instrumentality of Miami-Dade County Florida . . . which is itself a political subdivision of the State of Florida." *Fin. Healthcare Associates,*

---

[3] These cases are further distinguishable because many of them involved state causes of action, whereas this case involves federal causes of action, i.e., ADA violations. *See Walker*, 771 F.3d at 752 (citing *Stewart*, 908 F.2d at 1510) (finding it "improper to conflate sovereign immunity with regard to a state-created tort with Eleventh Amendment immunity for a federal cause of action").

7

*Inc. v. Pub. Health Trust of Miami-Dade Cty.*, 488 F. Supp. 2d 1231, 1234 (S.D. Fla. 2007); *accord Rosario v. Miami-Dade Cty.*, 490 F. Supp. 2d 1213, 1217 n.1 (S.D. Fla. 2007); *Monica San Angelo v. Jackson Memorial Hospital*, No. 07-212200-AJ, DE 13 (S.D. Fla. 2007). Of the federal cases, *San Angelo* is particularly instructive because Defendant Health Trust was also the defendant in that case and, in a motion to dismiss, characterized itself as "an agency of Miami-Dade County, a political subdivision of the State of Florida." *San Angelo*, No. 07-21220-AJ, DE 8 at 5. The Honorable Adalberto Jordan agreed with the Health Trust and, in granting its motion to dismiss in part, performed a trenchant analysis of the PHT's statutory underpinning, which this Court incorporates and reaffirms:

> Florida Statute § 154.07 authorizes each county in the state to create a public health trust to operate health care facilities in the county. Pursuant to § 154.07, Miami-Dade County created a public health trust under which Jackson Memorial Hospital operates. *See* Miami-Dade County Code § 25A-1 ("County Code"). Specifically, County Code § 25A-1 states:
>
>> There is hereby created and established by authority of Chapter 73-102, Laws of Florida 1973, as an *agency and instrumentality of Miami-Dade County*, a revocable statutory trust the terms of which may be modified by Miami-Dade County, which trust shall be named and known as the "Public Health Trust of Miami-Dade County, Florida." The Trust shall be a public body corporate and politic which, through its governing body, may exercise all those powers either specifically granted herein or necessary in the exercise of those powers herein enumerated. *Id.* (emphasis added).
>
> County Code § 25A-2, together with § 25A-1, holds the "Public Health Trust of Miami-Dade County, Florida" responsible for the "operation, maintenance, and governance" of Jackson Memorial Hospital "and all related facilities . . . in which Miami-Dade County has a legal interest." *See* Miami-Dade County Code § 25A-2.

8

*San Angelo*, No. 07-21220-AJ, DE 13 at 3-4. Ultimately, Judge Jordan concluded that Jackson Memorial Hospital is a facility governed by Miami-Dade County through the Health Trust.

This conclusion aligns with two advisory opinions of the Florida Attorney General, one issued in 1978, the other in 2003. *See* 1978 Fla. Op. Att'y Gen. 79 (Mar. 2, 1978); Fla. Att'y Gen. Op. 2003-12 (Mar. 28, 2003). In 1978, the Florida Attorney General responded to a question which asked whether a member of the Board of Trustees of the Health Trust might also serve on the Board of Business Regulation. 1978 Fla. Op. Att'y Gen. 79. The Florida Constitution prohibits any person from holding at the same time more than one office under the government of the state. Fla. Const. art. II, § 5. It was understood that serving on the Board of Business Regulation amounted to occupying an office under the government of the state, so the only question was whether serving on the Board of Trustees of the Health Trust amounted to occupying an office under the government of the state. Although the term "office" had not been constitutionally defined, the Florida Supreme Court had found that the term "implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office . . . . The term office embraces the idea of tenure, duration, and duties in exercising some portion of the sovereign power, conferred or defined by law and not by contract." 1978 Fla. Op. Att'y Gen. 79 (quoting *State v. Sheats*, 78 Fla. 583, 587 (1919)). The Florida Attorney General concluded that the public health trusts "have not been statutorily vested

9

with independent powers, but rather possess only such powers as the governing body of the *county* may choose to bestow." *Id.* (emphasis added). Therefore, the Florida Attorney General was "not persuaded that a board of trustees of a *county* public health trust possesses the independent attributes of sovereignty which are characteristic of an office [under the government of the state]." *Id.* (emphasis added). Likewise, in 2003, the Florida Attorney General responded to a substantively identical question which asked whether a public officer may serve simultaneously as a member of the board of the Health Trust without violating Article II, section 5(a), of the Florida Constitution. *See* Fla. Att'y Gen. Op. 2003-12. Echoing the opinion of his predecessor, the Florida Attorney General concluded that the purpose for the creation of the public health trusts was to "respond to concerns expressed by *county* governing bodies regarding their inability to effectively manage the operations of hospitals and other health facilities," that each public health trust was authorized to operate and govern a designated facility, such as Jackson Memorial Hospital, and that the governing body of each public health trust was a board of trustees consisting of members appointed by the governing body of the *county*, using criteria determined by the governing body of the *county*. *Id.* (emphasis added). Just like his 1978 predecessor, the Florida Attorney General was "not persuaded that a board of trustees of a *county* public health trust possesses the independent attributes of sovereignty which are characteristic of an office [under the government of the state]." *Id.* (emphasis added).

This Court finds these advisory opinions to be highly instructive as to how state law defines the Health Trust. Separated in time by two decades, both opinions conclude that the Health Trust possesses only such powers as the governing body of the county may choose to bestow. True, the Florida Statute that authorizes the powers of the board of trustees of the public health trusts states that "[t]he board of trustees of each public health trust shall be deemed to exercise a public and essential governmental function of both the state and the county," but this conclusory language was in effect when the Florida Attorney General concluded in 2003 that the board of trustees of the Health Trust does *not* possess the independent attributes of sovereignty which are characteristic of an office under the government of the state, and this conclusion derived from careful consideration of the legislative history and overall statutory scheme. Fla. Stat. § 154.11. Upon independent review of the same, as well as consideration of the how the state courts and federal courts treat the Health Trust, this Court concludes that state law defines the Health Trust as an agency of Miami-Dade County.

## B. What Degree of Control the State Maintains Over the Entity

As already established, the state maintains *no* control over the Health Trust. Public health trusts such as the Defendant Health Trust possess only such powers as the governing body of the county may choose to bestow. In arguing to the contrary, Defendant states that "employees of a public health trust are included in the State and County Officers and Employees' Retirement System and in the Florida Retirement System." DE 11 at 5 (citing Fla. Stat. § 154.12). But inclusion in a state registry shows

11

state registration, not state control. Furthermore, Defendant never states whether its employees are registered as state officers and employees or county officers and employees. Defendant further points out that "[t]he state legislature also provides that the board of trustees has the power to '[t]o appoint, remove, or suspend employees or agents of the board, fix their compensation, and adopt personnel and management policies.'" *Id.* (quoting Fla. Stat. § 154.11). However, the board of trustees consists of members appointed by the governing body of the *county*, using criteria determined by the governing body of the *county*. Fla. Stat. § 154.09. Although state legislation enables the county to control the Health Trust, the state itself maintains no degree of control over the Health Trust's employment related functions. *See Ex parte Madison Cty. Bd. of Educ.*, 1 So. 3d 980, 988 (Ala. 2008).

## C. Where the Entity Derives Its Funds and Who is Responsible for Judgments Against the Entity

Defendant claims that the third and fourth factors, although relevant, do not "tip the balance" against Eleventh Amendment immunity. DE 11 at 5-6. Defendant never states where the Health Trust derives its funds or who is responsible for judgments against it. This alone is grounds for denial of the motion to dismiss. *See Walker*, 771 F.3d at 754-55, n.4.

Despite the lack of discussion of these factors in the underlying motion, this Court, acting in the interest of a complete and thorough judicial review, considers Plaintiff's discussion of these factors and concludes that they, on balance, weigh against the claim that the Health Trust is an arm of the state. For the third factor, Plaintiff cites Miami-

Dade County Code Sec. 25A-5, which states in pertinent part that "[t]he Trust shall establish a fiscal year which coincides with that of Miami-Dade County, and the County shall provide the Trust with financial support pursuant to the official County budget." Thus, the Health Trust is funded by Miami-Dade County. For the fourth factor, Plaintiff states that Miami-Dade County passed the ordinance permitting the Health Trust to sue and be sued. *See* Miami-Dade County Code Sec. 25A-4. Because Miami-Dade County funds the Health Trust and authorizes it sue and be sued, Plaintiff suggests that all signs point toward Miami-Dade County being responsible for judgments against the Health Trust. Given the absence of any authority to the contrary, this Court agrees.

### III. CONCLUSION

Upon review, all four factors weigh against finding the Health Trust to be an arm of the state in carrying out employment related functions: state law does not define the Health Trust as a state agency; the State maintains no degree of control over the Health Trust's employment related functions; the Health Trust derives its funds from Miami-Dade County; and Miami-Dade County appears to be responsible for judgments against it. Defendant has made no showing as to the third and fourth factors of the Eleventh Amendment analysis, which is an independent ground for denial of the motion to dismiss.

Accordingly, it is **ORDERED, ADJUDGED**, and **DECREED** that:

1. Defendant's Motions to Dismiss Complaint **(DE 11)** be, and the same is, hereby **DENIED**.

2. Defendant shall **ANSWER** the Complaint **(DE 1)** within **twenty (20) days** of the date of this Order.

3. Plaintiff's Unopposed Motion for Leave to File a Supplemental Response to Defendant's Motion to Dismiss **(DE 15)** be, and the same is, hereby **DENIED as moot**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 27th day of July, 2016.

> *[signature]*
> JAMES LAWRENCE KING
> UNITED STATES DISTRICT JUDGE
> SOUTHERN DISTRICT OF FLORIDA

**Cc:** All counsel of record